IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| SUPREME BRIGHT DALLAS II, LLC; SUPREME BRIGHT DALLAS PARKING, LLC, | § § § § | |
| *Plaintiffs*, | § § | |
| vs. | § § | CIVIL ACTION NO. 3:21-cv-00321 |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY, | § § § § | |
| *Defendant*. | § | |

**PLAINTIFFS' ORIGINAL COMPLAINT**

Plaintiffs Supreme Bright Dallas II, LLC ("Supreme Bright") and Supreme Bright Dallas Parking, LLC (collectively, "Plaintiffs") file their Original Complaint against Defendant Liberty Mutual Fire Insurance Company ("Liberty Mutual") and would respectfully show as follows:

**I.   PARTIES**

1. Plaintiff Supreme Bright Dallas II, LLC is a Texas limited liability company. The sole member of Supreme Bright Dallas II, LLC is NewcrestImage Holdings, LLC, a Texas limited liability company. The members of NewcrestImage Holdings, LLC are residents of Texas.

2. Plaintiff Supreme Bright Dallas Parking, LLC is a Texas limited liability company. The sole member of Supreme Bright Dallas Parking, LLC is NewcrestImage Holdings, LLC, a Texas limited liability company. The members of NewcrestImage Holdings, LLC are residents of Texas.

3. Liberty Mutual Fire Insurance Company is a Wisconsin corporation with its principal place of business in Boston, Massachusetts. Liberty Mutual is engaged in the business

of insurance in the state of Texas and can be served through its registered agent for the service of process, Corporation Service Company, 211 East 7th Street, Suite 620, Austin, Texas 78701-3218.

## II.     JURISDICTION & VENUE

4. The foregoing paragraphs are incorporated herein by reference.

5. This Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) and (c) because Defendant is not a citizen of any state of which Plaintiffs are also citizens, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

6. Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in Dallas, Texas.

## III.    FACTUAL BACKGROUND

**A.    The Hotel**

7. The foregoing paragraphs are incorporated herein by reference.

8. Supreme Bright is the owner and developer of the hotel complex located in downtown Dallas at 1712 Commerce Street, Dallas, Texas 75201 (the "Hotel" or the "Property").

9. The Property is an AC Hotel & Residence Inn by Marriott with 249 rooms and approximately 2,600 square feet of meeting space.

10. The Property was originally constructed in 1956 as the Mercantile Commerce Building.

11. In 2015, Plaintiffs began work on a $54.9 million renovation project to develop the Property as a dual-branded hotel, with ground-floor retail space and a reinforced concrete parking garage, including 360 guest and public parking spaces.

**B.     The Policy**

12.     To insure the Property during construction, Liberty Mutual issued Builders' Risk Insurance Policy No. YM2-L9L-462315-145 (the "Policy") to Plaintiffs for the period from September 11, 2015 to November 30, 2017.

13.     The Policy provides coverage for direct physical loss or damage caused by a covered peril to "building materials" and "existing buildings" that are part of a "renovation project." The Policy's "schedule of coverages" includes the renovation of the Property for the following limits: $40 million for building materials and $20 million for existing building coverage.

14.     The Policy's "covered perils" include all risks of direct physical loss not otherwise excluded.

15.     The Policy's coverage for damage to building materials and existing buildings extends to the cost to repair, replace or rebuild the property with material of like kind or quality to the extent practicable.

16.     The Policy includes "Delay in Completion" coverage, with up to $1,500,000 in coverage for "actual loss of rental income" during the "delay period."

17.     However, Liberty Mutual improperly omitted the accompanying Delay in Completion Coverage Part referenced in the Policy's terms and necessary to effect the Policy's scheduled Delay in Completion coverage and related coverages.

18.     Under Liberty Mutual's Delay in Completion Coverage Part, Form IM 7079 09 11, the "delay period" includes "the period of time the completion of the construction, erection, or fabrication of a covered 'building or structure' is delayed as a result of direct physical loss or damage caused by a covered peril to property covered under the Builders' Risk Coverage form to which this coverage part is attached."

19. Liberty Mutual's Delay in Completion Coverage Part, Form IM 7079 09 11, also provides coverage for expenses incurred during the "delay period" that are necessarily incurred for the purpose of expediting the repair or replacement of the covered property sustaining direct physical loss or damage.

20. Liberty Mutual's Delay in Completion Coverage Part, Form IM 7079 09 11, also includes supplemental coverage for general administrative expenses and overhead expenses incurred during the delay period, including necessary and reasonable expenses relating to the construction, erection, or fabrication of a covered building or structure that are over and above those costs that would have been incurred had there been no delay period.

21. Liberty Mutual's Delay in Completion Coverage Part, Form IM 7079 09 11, provides that in determining income coverage loss, Liberty Mutual is to consider "the probable experience [of the business] during the time of 'delay' had no loss occurred."

22. The Policy's "Delay in Completion Schedule" includes an "X" in the box next to "Additional Construction Expense" indicating that "coverage applies" for the necessary and reasonable expenses relating to the construction, erection, or fabrication of a covered building or structure that are over and above those expenses that would have been incurred had there been no delay period, such as advertising expense, design fees, financing costs, lease administration expenses, professional fees, and permit fees.

23. The Policy also includes specific endorsed "Expediting Expenses Coverage," including "reasonable expediting expenses necessary to complete construction within the time frame specified in the construction contract." These covered "expediting expenses" include, but are not limited to, additional labor or overtime, transportation costs and storage expense, expense to rent additional equipment and similar construction expenses.

24. In addition to these coverages, the Policy includes a Texas Amendatory Endorsement, which modifies the Policy's terms regarding the "Payment of Reasonable Costs" and requires Liberty Mutual to pay "the reasonable costs incurred by [Plaintiffs] for necessary repairs or emergency measures performed solely to protect covered property from further damage by a peril insured against."

**C.     The Fire & Claim**

25. Early in the morning of September 27, 2017, a three-alarm fire in the Hotel's parking garage caused substantial damage to the garage, the adjoining Hotel and other property (the "Fire" or "Occurrence").

26. Plaintiffs provided timely notice of the resulting loss and damage to Liberty Mutual (the "Claim").

27. As a result of this Occurrence, Plaintiffs have incurred and paid more than $2.1 million for repairs and related expenses to repair, replace or rebuild the damaged property with material of like kind or quality.

28. Part of such costs and expenses incurred by Plaintiffs were necessary and reasonable expenses relating to the renovation of the Hotel and the construction of the parking garage that are over and above those expenses that would have been incurred had there been no occurrence and no delay in completion.

29. Part of such costs and expenses incurred and paid by Plaintiffs were necessarily incurred to expedite the repair and replacement of the parking garage and related property damage.

30. Part of such costs and expenses were incurred and paid by Plaintiffs to protect the Hotel and adjoining parking garage from further insured loss or damage.

31. Liberty Mutual has wrongfully refused and failed to pay the full amount of these costs and expenses, resulting in substantial damages to Plaintiffs.

32. By omitting and overlooking the Delay in Completion Coverage Part, which is necessary to the Policy's expressly scheduled Delay in Completion coverage, Liberty Mutual has improperly ignored the Policy's supplemental coverage for general administrative expenses and overhead expenses incurred during the delay period, including necessary and reasonable expenses relating to the construction, erection, or fabrication of a covered building or structure that are over and above those costs that would have been incurred had there been no delay period.

33. As a result of the Occurrence, completion of the Hotel renovation, including the construction of the adjoining parking garage was substantially delayed.

34. As a result of this delay, Plaintiffs sustained more than $1.3 million in compensable lost rental income under the Policy.

35. Liberty Mutual has wrongfully refused and failed to pay the full amount of the lost rental income owed to Plaintiffs under the Policy, resulting in substantial damages to Plaintiffs.

36. Liberty Mutual and its consultants have not only failed to recognize the appropriate loss period, Liberty Mutual and its agents have wrongfully calculated Plaintiffs' rental income loss based on the experience of the Hotel's parking business during the first three weeks of March 2020, during the early part of the COVID-19 pandemic. The performance of the Hotel and related parking business during this period is not representative of the probable experience of this business during the time of the delay period, had no loss occurred. Liberty Mutual's focus on financial results in March 2020, without considering the likely performance of the parking business beyond March 2020 and without the impact of the COVID-19 pandemic is improper and deliberately intended to deflate the value of Plaintiffs' Claim.

37. Throughout the handling of this Claim, Liberty Mutual has wrongfully delayed the progress and payment of Plaintiffs' loss and damage, including by (1) making repeated requests for information and documentation for elements of Plaintiffs' Claim that were either irrelevant to coverage or valuation of the Claim or were for amounts Liberty Mutual never intended to pay; and (2) by issuing late and partial supplemental payment for Claim elements that should have been paid in full and without Liberty Mutual's extreme delays.

38. Liberty Mutual's conduct in the handling of this Claim has caused Plaintiffs substantial damages.

## IV.   CAUSES OF ACTION

### A.   Breach of Contract

39. The foregoing allegations are incorporated herein by reference.

40. The Policy is a valid, enforceable contract.

41. Plaintiffs are insured under the Policy and have standing to assert claims under the Policy.

42. Plaintiffs have satisfied all conditions under the Policy.

43. The terms of the Policy unambiguously provide coverage for the Claim.

44. Alternatively, the terms of the Policy are ambiguous and should be construed in favor of coverage.

45. Liberty Mutual has breached the Policy by refusing and failing to pay Plaintiffs the full value of the Claim.

46. Liberty Mutual's breach of the Policy has caused Plaintiffs substantial damages.

### B.    Chapter 542 of the Texas Insurance Code

47. The foregoing allegations are incorporated herein by reference.

48. Plaintiffs have made a claim under the Policy for the loss and damage resulting from the Fire and has satisfied all conditions under the Policy.

49. Liberty Mutual has engaged in conduct that constitutes violations of Chapter 542 of the Texas Insurance Code by delaying and/or failing to timely pay the full value of Plaintiffs' loss and damage in connection with the Claim.

50. Consequently, Plaintiffs are entitled to the damages set forth in § 542.060 of the Texas Insurance Code, including, in addition to the amount of Plaintiffs' business income loss, interest at the rate of eighteen percent (18%) per annum as well as any and all other relief provided therein.

**C.    Bad Faith**

51. The foregoing allegations are incorporated herein by reference.

52. Plaintiffs have an insurance contract with Liberty Mutual. An insurance contract creates a common law duty for the insurer, Liberty Mutual, to deal fairly and in good faith with Plaintiffs.

53. Liberty Mutual has breached its duty of good faith and fair dealing (1) by failing to acknowledge coverage for the full value of Plaintiffs' Claim, (2) delaying payments on certain portions of the Claim; (3) failing to pay other parts of the Claim; and (4) wrongfully undervaluing Plaintiffs' rental income loss.

54. Plaintiffs been damaged as a direct and proximate result of Liberty Mutual's breach of its duty of good faith and fair dealing. Moreover, because Liberty Mutual's bad faith was accompanied by malicious and intentional conduct, Plaintiffs are entitled to an award of punitive damages.

**D.     Attorneys' Fees**

55.     The foregoing allegations are incorporated herein by reference.

56.     Due to the actions of Liberty Mutual, Plaintiffs have been required to retain the services of the law firm of Haynes and Boone, LLP.

57.     Plaintiffs have agreed to pay Haynes and Boone a reasonable fee for its services necessarily rendered and to be rendered in this action. Pursuant to Section 38.001 of the Texas Civil Practice & Remedies Code and/or Section 542.060 of the Texas Insurance Code, Plaintiffs are entitled to an award of its reasonable attorneys' fees against Liberty Mutual in an amount to be established at trial.

**V.     NOTICE OF INTENT TO PURSUE CLAIM UNDER
CHAPTER 541 OF THE TEXAS INSURANCE CODE**

58.     The foregoing allegations are incorporated herein by reference.

59.     Pursuant to § 541.154 of the Texas Insurance Code, Plaintiffs hereby provide notice of its intent to pursue a claim against Liberty Mutual under § 541.151 of the Texas Insurance Code by amending this suit after 60 days.

60.     Liberty Mutual has engaged in unfair or deceptive acts or practices as defined by Section 541.061 of the Texas Insurance Code.

61.     Liberty Mutual has misrepresented material facts relating to the coverage for Plaintiffs' Claim in violation of Section 541.060(a)(1) of the Texas Insurance Code by improperly valuing the daily loss of parking revenue at the Hotel, including by basing such valuation on the performance of the business in March 2020 and during the COVID-19 pandemic.

62.     Liberty Mutual has failed to attempt in good faith to effectuate a prompt, fair and equitable settlement of the Claim, with respect to which Liberty Mutual's liability is reasonably clear, by (1) misrepresenting the terms of the Policy; (2) deliberately and improperly undervaluing

Plaintiffs' rental income loss contrary to the terms of the Policy; and (3) repeatedly delaying and failing to pay for Plaintiffs' Claim on the pretext of requesting information that is not relevant to the Claim or Liberty Mutual's determination of coverage for the Claim.

63. By engaging in the same conduct, Liberty Mutual has (1) failed to promptly provide Plaintiffs with a reasonable explanation of the basis in the Policy, in relation to the facts and applicable law, for Liberty Mutual's failure to pay Plaintiffs' Claim in violation of Section 541.060(a)(3); (2) failed within a reasonable time to affirm or deny coverage for Plaintiffs' Claim in violation of Section 541.060(a)(4); and (3) failed to pay Plaintiffs' Claim without conducting a reasonable investigation with respect to the Claim in violation of Section 541.060(a)(7).

64. As a result of Liberty Mutual's conduct, Plaintiffs have suffered damages in an amount no less than $1 million as well as attorneys' fees in an amount not less than $15,000.

65. Liberty Mutual knowingly committed one or more of the violations referenced above, and Plaintiffs seek, in addition to actual damages, court costs, and attorneys' fees, an amount not to exceed three times the amount of actual damages.

## VI.   JURY DEMAND

66. Plaintiffs hereby request a jury trial pursuant to Rule 38 of the Federal Rules of Civil Procedure.

## VII.   PRAYER

WHEREFORE, Plaintiffs respectfully request that this Court grant it the following relief:

(1) Judgment awarding Plaintiffs all damages caused by Defendant's breach of the Policy;

(2) Judgment awarding Plaintiffs all damages sustained as a result of Defendant's violations of Chapter 542 of the Texas Insurance Code;

(3) Judgment awarding Plaintiffs all damages sustained as a result of Defendant's breach of its duty of good faith and fair dealing;

(4) Judgment awarding Plaintiffs all reasonable and necessary attorneys' fees and expenses incurred in this matter under Chapter 38 of the Texas Civil Practice & Remedies Code and Chapter 542 of the Texas Insurance Code;

(5) Judgment awarding Plaintiffs pre-judgment and post-judgment interest in the amount allowed by law;

(6) Judgment awarding Plaintiffs all costs of court; and

(7) Such other and further relief to which Plaintiffs may be justly entitled.

Respectfully submitted,

*/s/ Micah Skidmore*_____
Micah Skidmore
Texas Bar No. 24046856
micah.skidmore@haynesboone.com
Emily Buchanan
Texas Bar No. 24101568
Emily.buchanan@haynesboone.com
HAYNES AND BOONE, L.L.P.
2323 Victory Avenue, Suite 700
Dallas, Texas 75219
Telephone:    (214) 651-5000
Telecopier:    (214) 651-5940

ATTORNEY FOR PLAINTIFFS

4831-5515-6948 v.3